UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HARRINSON JOSE OSUNA BENITEZ,

          Petitioner,

   v.

LAURA HERMOSILLO, et al.,

          Respondent.

CASE NO. 2:25-cv-02535-BAT

**ORDER GRANTING WRIT OF HABEAS CORPUS**

Petitioner, a detainee of the Northwest Immigration Processing Center (NWIPC), requests the Court grant 28 U.S.C. § 2241 habeas relief and order Respondents to (1) immediately release him from immigration detention; (2) require Respondents to provide him adequate written notice and a hearing if they seek to redetain him; (3) declare detaining Petitioner without an individualized determination before a neutral decisionmaker violates due process; and (4) pay reasonable attorney fees and costs.

## BACKGROUND

Petitioner avers, and Respondent largely does not dispute, the facts leading to Petitioner's detention. Petitioner, a citizen of Venezuela and his partner Winnyffer left Venezuela in 2024 seeking asylum from persecution and torture. Petitioner is a trained professional tattoo artist. Petitioner sought entry into the United States by registering through the Department of

ORDER GRANTING WRIT OF HABEAS
CORPUS - 1

Homeland Security (DHS) app called CBP One. On September 24, 2024, he appeared at the Hidalgo, Texas Port of entry pursuant to his CBP One appointment, was questioned about his tattoos, provided biometric information, was fingerprinted and detained for three days. The government granted Petitioner parole, issued a Form I-94 valid until September 24, 2026, and released him on September 27, 2024 under 8 U.S.C. § 2252(d)(5)[1] (Temporary admission for humanitarian reasons). *See* Petition, Dkt. 1 at 5 citing, *Valladares* Decl.1, Exhibits A, B.

In December 2024, Petitioner's and Winyffer's son was born in Portland, Oregon. On February 27, 2025, at Respondents' request, Petitioner appeared for an in-person immigration hearing in Portland. In June 2025, Petitioner applied for asylum, withholding of removal and protection under the Convention Against Torture (CAT). At Respondents' request, Petitioner attended another in-person immigration hearing on August 18, 2025 and the immigration court scheduled another hearing for January 28, 2027.

In September, Petitioner received a letter directing him to report on October 15, 2025 to the Portland ICE-ERO office. Petitioner appeared and was informed he must appear on November 17, 2025 for another ICE-ERO appointment. When Petitioner appeared on November 17, 2025, ICE officers, without notice, detained Petitioner and transported him to NWIPC because of his tattoos. Respondents provided no notice of revocation of parole, the opportunity to reapply for parole, or a bond hearing before a neutral decisionmaker. On December 11, 2025 Petitioner filed the instant habeas petition.

---

[1] U.S.C. § 1182(d)(5)(A) provides:

The Attorney General may, except as provided in subparagraph (B) or in section 1184(f) of this title, in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Attorney General, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

ORDER GRANTING WRIT OF HABEAS
CORPUS - 2

# DISCUSSION

The parties consented to proceed before the undersigned United States Magistrate Judge and this Court thus has the authority to grant habeas relief if Petitioner demonstrates his custody violates the Constitution, laws, or treaties of the United States under 28 U.S.C. § 2241(c)(3). Petitioner bears the burden of proving by a preponderance of the evidence his detention is contrary to law. *Parke v. Raley*, 506 U.S. 20, 31 (1992). Under 28 U.S.C. § 2241, federal courts have jurisdiction over challenges to the detention of noncitizens before removal. *Zadvydas v. Davis*, 533 U.S. 678 (2001). The Court lacks jurisdiction to grant a habeas petition challenging final orders of removal. *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1005 (W.D. Wash. 2019). But the Court retains jurisdiction over Petitioner's habeas petition as it does not challenge an order of removal but his detention, and the process used to detain him. *Id.*

As an initial matter, Respondent contends Petitioner is held under § 1225 and thus subject to mandatory detention. Section 1225 governs the detention of noncitizens seeking admission into the United States. *See Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). Section 1225(b)(2)(A) provides "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A).

"A noncitizen detained under [s]ection 1225(b)(2) may be released only if he is paroled 'for urgent humanitarian reasons or significant public benefit' pursuant to 8 U.S.C. § 1182(d)(5)(A)." *Lepe v. Andrews*, --F. Supp.3d--, 2025 WL 2716910 at * 3 (E.D. Calif. Sept. 23, 2025) citing *Gomes v. Hyde*, 25 Civ. 11571, 2025 WL 1869299, at *2 (D. Mass. July 7, 2025). "Other than this limited exception[,] . . . detention under § 1225(b)(2) is considered mandatory ...

[and] [i]ndividuals detained under § 1225 are not entitled to a bond hearing." *Lopez Benitez v. Francis,* No. 25 CIV. 5937 (DEH), 795 F.Supp.3d 475, 484, 2025 WL 2371588, at *3 (S.D.N.Y. Aug. 13, 2025).

In contrast to § 1225 which is applicable to certain noncitizens seeking admission into the country, § 1226 governs the detention of certain noncitizens who are already in the country pending the outcome of removal proceedings. *Jennings*, 583 U.S. at 289. Normally, § 1226(a) is the "default rule" applicable to noncitizens already in the country. *Id*. at 288. Under this default rule, an immigration officer initially determines to either detain or release the noncitizen. After this decision is made, a detained noncitizen may request a bond hearing before an immigration judge. 8 C.F.R. § 1236.1(c)(8), (d)(1). At any such bond hearing, "the burden is on the non-citizen to 'establish to the satisfaction of the Immigration Judge . . . that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight.'" *Hernandez v. Sessions*, 872 F.3d 976, 982 (9th Cir. 2017) (citation omitted).

Sections 1225 and 1226 thus treat the detention of noncitizens arriving at a port of entry seeking admission differently from noncitizens who are within the United States, regardless of how the noncitizen entered the county. At first glance, common sense leads to the conclusion that Petitioner who presented himself to immigration officers at a point of entry for a government sanctioned CBP-One appointment and was paroled into and has remained in the United States for a year should be deemed an admitted individual whose redetention is governed by § 1226, and not an individual "seeking admission" admission under § 1225. But the statutory framework and caselaw, the Court should apply is less than clear.

In this case, it cannot be disputed Petitioner was initially examined and detained under § 1225 as an "arriving alien" when he presented himself to immigration officers at a port of entry

in Hidalgo, Texas. *See also* Dkt. 1, Exhibit 2, Notice to Appear stating "You are an arriving alien." Thus, the record shows, and the habeas petition avers, after being detained at a port of entry, Petitioner was paroled into the United States under 8 U.S.C. § 1182(d)(5)(A) for humanitarian reasons. *See also* Dkt. 1, Exhibit A (indicating Petitioner's class of admission was "DT" signifying admission for humanitarian reasons).

Section 1182(d)(5)(A) allowed Petitioner to physically enter and remain in the United States. However, the statute also allows Respondents to continue to treat Petitioner "as if stopped at the border" under certain circumstances. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139, (2020) ("Aliens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are 'treated' for due process purposes 'as if stopped at the border.'") (citation omitted); *see also Del Valle Castillo v. Wamsley*, 2025 WL 3524932 at * 6 (W.D. Wash. Nov. 26, 2025) (acknowledging a parolee can be treated as "seeking admission" despite a long period of living in the United States while on humanitarian parole.).

Thus, although Petitioner was paroled under § 1182(d)(5)(A), granted released, granted admission into the United States, and has lived in Oregon for over a year in a lawful manner, the statute creates the legal "entry fiction" that Petitioner has not been granted admission and is still an individual seeking admission. *See Rodriguez v. Robbins*, 715 F.3d 1127, 1141 (9th Cir. 2013) (noting its decision does not undermine the reasoning in *Barrera-Echaverria*, 44 F.3d 1441 (9th Cir. 1995) regarding the "entry fiction" applicable to noncitizens falling under § 1225)

Despite the oddity of treating Petitioner who applied for entry in reliance on his government approved CBP-One application, worse than a person who did not enter at a port of entry and instead impermissibly sneaked across the border in violation of the law, the Court is

ORDER GRANTING WRIT OF HABEAS
CORPUS - 5

1  constrained to find Petitioner is subject to mandatory detention under § 1225, not discretionary
2  detention under § 1226.
3        That Petitioner is subject to mandatory detention under § 1225 does not end the Court's
4  inquiry. The Due Process Clause applies regardless of whether the noncitizen's presence is
5  lawful, unlawful, temporary, permanent and regardless of whether detention falls under § 1225
6  or § 1226. *See Zadvydas v. Davis*, 533 U.S. at 693; *Hernandez v. Sessions*, 872 F.3d 976, 990
7  (9th Cir. 2017) ("[I]t is well-established that the Due Process Clause stands as a significant
8  constraint on the manner in which the political branches may exercise their plenary authority.").
9  Petitioner's interest in not being detained is "the most elemental of liberty interests[.]" *Hamdi v.*
10 *Rumsfeld*, 542 U.S. 507, 529 (2004).
11       As to Petitioner's situation in which he was initially released upon parole and then
12 redetained numerous courts in this circuit have found such individuals have a protected liberty
13 interest in remaining out of custody. *See Pinchi v. Noem*, 792 F.Supp.3d 10125, 1025, 1032-22
14 (N.D. Cal. 2025) (collecting cases); *Tesara v. Wamsley*, 2025 WL 3288295 at * 4 (W.D. Wash.
15 Nov. 25, 2025) (mandatory detention under § 1225(b) despite noncitizens' due process rights and
16 with no consideration of their deep financial, community, and familial ties in the country raises
17 constitutional issues) (citing, *Salgado v. Mattos*, No. 2:25-cv-01872-RJB-EJY, 2025 WL
18 3205356, at *20 (D. Nev. Nov. 17, 2025)); *Arias v. Larose*, No. 3:25-CV-02595-BTM-MMP,
19 2025 WL 3295385 (S.D. Cal. Nov. 25, 2025) (When a noncitizen is redetained in violation of
20 due process, the applicability of § 1225 or § 1226 is not before the court because detention is
21 improper regardless of which statute applies).
22       Plaintiff contends, and the Court agrees, the record in this case establishes he has a
23 protected interest in his liberty. Petitioner presented himself at a port of entry pursuant to the

ORDER GRANTING WRIT OF HABEAS
CORPUS - 6

CBP-One program. He was admitted into and lived in the United States for over a year in Oregon with his partner and child before he was arrested when he appeared for an appointment at the ICE office where he was detained and transported to a detention facility in Washington away from his family and home. It cannot be disputed Respondents have deprived Petitioner of an established interest in his liberty. Respondents do not address or present any argument opposing Petitioner's contention he retains due process protections or that due process directs his release.

Because § 1225 provides for mandatory detention without a bond hearing, the Court considers what process Petitioner was due. Petitioner contends the Court should apply the test articulated in *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976) and applied within this district in *Tesara v. Wamsley*, 2025 WL 3288295 (W.D. Wash. Nov. 25, 2025). The *Tesara* Court stated "the parties agree that the three-part *Mathews* test applies here." *Id.* at * 3. Under the *Mathews* test, the process due:

> generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews* at 335. As noted above, Respondents have not responded to Petitioner's contention that under the *Mathews* test, due process directs his immediate release.

Thus, applying the *Mathews* test, the Court finds, as noted above, Petitioner has a private liberty interest that has been and will continue to be affected by official action. The facts discussed above establish Petitioner has a substantial interest in remaining in his home with his family and maintaining the relationships he has developed in the one year that he has lived in Oregon. The Court thus concludes the first *Mathews* factor weighs in favor of Petitioner.

ORDER GRANTING WRIT OF HABEAS
CORPUS - 7

Next, the record shows the risk of erroneous deprivation of Petitioner's liberty interest is high. Respondents submitted a "Record" that states "After a review of the subject's possible gang affiliation which reveals tattoos consistent with TDA, AFOD CHAN concurred that Osuna Benitez met the criterial for OREC revocation." OREC is the acronym for Order of Release on Recognizance" The record shows Petitioner was issued an I-94 arrival record and was paroled into the United States for humanitarian reasons; the record does not indicate issuance of an order of release on recognizance, and Respondents have produced no such order setting forth the conditions that Petitioner allegedly violated. Rather, the record shows Petitioner was detained under § 1225 and thus he was paroled into the Country because the statute does not permit recognizance release. Further the record shows upon entry Petitioner had no criminal history and since entry Petitioner has not committed any law violations and has always responded to requests to appear before the immigration court or to an ICE office. The Court thus finds there is no factual basis to find Petitioner violated conditions of an OREC justifying detention, as no such order exists, and Petitioner's compliance with all ICE requirements have been exemplary.

As indicated above, an order of release on recognizance is not "humanitarian" or "public benefit" "parole into the United States" under section 1182(d)(5)(A) but rather a form of "conditional parole" from detention upon a charge of removability, authorized under § 1226. *See Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115–16 (9th Cir. 2007) (holding a noncitizen released on an "Order of Release on Recognizance" necessarily must have been detained and released under § 1226, including because he was not an "arriving alien" under the regulations governing section 1225 examinations). Hence, Respondent's claim Petitioner violated an OREC order of release is unfounded.

The Court also finds Respondents' claim Petitioner may have "gang' ties is unsupported. When Petitioner presented himself upon entry, his background check showed he had no criminal history, and that he had "arrived with a scheduled CBO One appointment." *See* Dkt. 10, Exhibit A. Upon initial examination, immigration officers raised no concerns about gang ties or the nature of Petitioner's tattoos, even though Petitioner's three-day detention afforded Respondents ample time to assess such concerns. When Petitioner was redetained in November 2025, immigration officers made no mention that they had been previously unaware of Petitioner's tattoos. Thus, tattoos which raised no concerns upon entry are now being relied upon to redetain Petitioner.

Additionally, the claims about the tattoos as evidence of gang affiliation is worded using speculative and vague language. Respondents claim Petitioner has "possible gang affiliation" with no meaningful proffer showing Petitioner **is or even likely to be** a gang member. Respondents state the tattoos are "consistent with TDA" without describing what the tattoos look like or setting forth the officer's expertise in identifying tattoos. There is no evidence Respondents investigated why Petitioner has tattoos, or whether the tattoos are common in Petitioner's home country and thus not signs of gang membership, or whether the tattoos are gang tattoos rather than simply being "consistent" with gang tattoos. Respondents appear to have performed no investigation into the tattoos, even though Petitioner told Respondents he was not associated with a gang association, is a professional tattoo artist, and has no criminal history. Respondents revoked Petitioner's parole and detained him solely on the possibility that he might be affiliated with a gang based upon tattoos that are not even described.

Thus, the records shows Petitioner has done all he could to enter and remain in the United States lawfully. He applied for and was granted a CPB One interview, was paroled, has lived in a

law-abiding manner, and has appeared for all court hearings and ICE check-ins as requested. His entry via the government's CBP One app is inconsistent with a gang member trying to enter the country without detection. His lack of criminal history is inconsistent with gang membership. There is further no evidence Petitioner has engaged in any conduct which indicates he is danger to the community or a risk to flee. His stable residence with his family in Oregon and his application for asylum in fact indicate he is not a risk to flee or a danger to the community. The risk Petitioner has been erroneously detained is extremely high and the Court accordingly finds the second *Mathews* factor weighs in Petitioner's favor.

And lastly, Respondents' interest in continued civil detention is low. Respondents would obviously have an interest in detaining Petitioner if he was a flight risk or has or will commit crimes. This interest is nonexistent. Respondents admitted Petitioner into the United States and he has lived in Oregon for over a year. Respondents' interest in suddenly detaining Petitioner is unfounded especially given how Petitioner took proper steps to lawfully present himself at a port of entry via a government program, Petitioner lacks any criminal history and has been law-abiding since he entered the country, Petitioner has a stable residence in Oregon with his partner and child and has lived in the community for over a year. The third *Mathews* factor weighs in favor of Petitioner.

The Court concludes, based upon the *Mathews* factors, Petitioner has a protected liberty interest in release from custody, and due process requires he be released on humanitarian parole just as he was released and permitted to enter the county in September 2024. The Court also concludes due process requires Petitioner be provided a hearing with proper notice before he can be redetained. *See Tesara v. Wamsley*, 2025 WL 328829 at * 6.

**CONCLUSION**

For these foregoing reasons, the Court **ORDERS**:

1. The petition for a writ of habeas corpus is **GRANTED**. Dkt. No. 1.

2. Respondents shall immediately **RELEASE** Petitioner (no later than 24 hours from the date of this order) and file a certification that he has so been released no later than January 2, 2025.

3. Respondents shall not redetain until and unless Petitioner has been afforded, adequate notice of intent to redetain which includes the grounds for redetention; the opportunity to a reapply for parole; and a hearing before a neutral decision maker.

4. Petitioner may file a motion for an award of fees and expenses under the Equal Access to Justice Act no later than January 26, 2026.

DATED this 30th day of December, 2025.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge